E-FILED
Monday, 21 September, 2026 02:07:25 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| JENNIFER HINES,<br><br>Plaintiff,<br><br>v.<br><br>CENTRAL TRANSPORT LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:26-cv-04016-SLD-RLH |

ORDER

In this case, Plaintiff Jennifer Hines alleges that Defendant Central Transport LLC ("Central Transport") failed to accommodate her pregnancy, harassed her because of her pregnancy, and wrongfully terminated her employment for the same reason. She seeks recovery under the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 to 5/10-105, and the Illinois Whistleblower Act, 740 ILCS 174/1 to 174/40. Before the Court is Central Transport's motion to dismiss, ECF No. 7, arguing that Hines cannot recover for any violation of the IHRA since she did not timely exhaust the administrative remedies established by statute. Because Hines timely complied with the administrative process required by the IHRA, Central Transport's motion is DENIED.

## BACKGROUND[1]

### I. Factual Background

In April 2022, Central Transport hired Hines as a driver at its terminal in Moline, Illinois. Her supervisor was Rory Niebuhr, Central Transport's terminal manager in Moline. Hines

[1] Unless otherwise stated, the facts described in this section are as alleged in Hines's Complaint, Not. Removal Ex. 1, ECF No. 1-1 at 4–43. For the sake of ruling on a motion to dismiss, the court "accept[s] as true all factual allegations in the . . . complaint and draw[s] all permissible inferences in [the plaintiff's] favor." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015).

alleges that, after she became pregnant in late 2022, Niebuhr began acting coldly towards her, refused to accommodate a pregnancy-related restriction, and ultimately concocted a scheme to pretextually terminate her employment.

On February 3, 2023, Niebuhr instructed Hines to drive a truck that could only travel at approximately thirty-five miles per hour and could not pass a pre-trip inspection under the Federal Motor Carrier Safety Administration regulations. Niebuhr informed her that if she left, it would be considered job abandonment. Hines left the site after telling Niebuhr that she could not safely operate the defective truck. On February 5, 2023, Niebuhr texted Hines that she was fired. The termination was never formally processed, but Niebuhr and Jose Tejada-Calderon, the Employee Relations Manager at Central Transport, told Hines that she could not return to work until she provided a doctor's note showing that she did not have any medical restrictions. After several weeks of further exchanges with Niebuhr and Calderon, Hines stopped receiving responses. After February 21, 2023, nobody from Central Transport communicated with Hines.

## II. Procedural History

On December 15, 2025, Hines filed suit against Central Transport in Illinois state court. *See* Compl. 1, Not. Removal Ex 1, ECF No. 1-1 at 4–43. She brings three counts for violations of the IHRA: Count I for harassment because of her pregnancy, Count II for failure to accommodate her pregnancy, and Count III for disparate treatment because of pregnancy. She brings two counts in the alternative for violations of the Illinois Whistleblower Act: Count IV for threatening retaliation, and Count V for retaliatory discharge. On January 21, 2026, Central Transport removed the case to federal court. Not. Removal, ECF No. 1.

Central Transport now moves to dismiss Counts I through III for failure to timely exhaust administrative remedies under the IHRA. Mot. Dismiss 1. Central Transport notes that Hines's

employment ended in early February 2023, triggering her 300-day deadline to file claims of unlawful employment practices with the Illinois Department of Human Rights ("IDHR"). Mem. Supp. Mot. Dismiss 1–2, ECF No. 8. Central Transport argues that Hines's Charge was not received by the IDHR until October 8, 2024, *see* IDHR Charge, Mem. Supp. Mot. Dismiss Ex. A, ECF No. 8 at 8–11, so Counts I–III must be dismissed for failure to comply with the statutory condition. Mem. Supp. Mot. Dismiss 2.

After the Court granted Hines's motion to file a response out of time, June 1, 2026 Text Order, ECF No. 11, Hines responded that she first filed her complaint with the IDHR on February 8, 2023, and the October 2024 date marks only when the complaint was perfected. *See* Resp. Mot. Dismiss 1, ECF No. 12. She argues that she does not run afoul of the statutory filing deadline because the perfected charge relates back to the date of first filing. *Id.* at 2.

The Court then granted Central Transport leave to reply to the new information presented in Hines's response. *See* July 10, 2026 Text Order, ECF No. 14. In its reply, Central Transport contends that (1) the Court should not accept Hines's new factual allegations made in her response, and (2) in any case Hines's lawsuit remains untimely because the IHRA requires that, if the IDHR does not issue an investigation report within 365 days, a complainant has 90 days to file a lawsuit. Reply 2, ECF No. 15. If the statutory clock began when Hines first filed her complaint on February 8, 2023, Central Transport reasons, then Hines was required to file her lawsuit by the end of 2024. *Id.*

Since the reply raised a new legal theory, the Court granted Hines leave to file a sur-reply. *See* July 10, 2026 Text Order. In her sur-reply, Hines argues that, even though her IDHR Charge relates back to the date of filing for purposes of the 300-day deadline for filing claims, it would

be absurd and inequitable for the 365-day investigation period to begin on that same date. Sur-reply 1–2, ECF No. 16.

## DISCUSSION

### I. Legal Standard

Courts will dismiss complaints that "fail[] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To determine whether a complaint states a claim, courts consider whether a complaint's "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. That is, a complaint must provide more than "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Courts conducting this review must accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012). However, courts do not accept a complaint's legal conclusions. *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013).

### II. Analysis

#### a. Materials Considered

Central Transport's defense is rooted not in the Complaint's allegations but in documentation of Hines's IDHR Charge that Central Transport attached to its memorandum. *See* IDHR Charge; *see also* Mem. Supp. 5 (noting that Exhibit A to Central Transport's memorandum—the IDHR Charge—shows that Hines "did not file her Charge until October 8, 2024"). Hines's response is similarly rooted in newly provided documents: her own declaration,

ECF No. 12 at 8–9, email correspondence between Hines and the IDHR, ECF No. 12 at 10–17, the Complainant Information Sheet ("CIS") Hines submitted to the IDHR, ECF No. 12 at 18–37, the IDHR's Notice of Substantial Evidence and Notice of Dismissal, ECF No. 12 at 38–44, and the IDHR Investigation Report, ECF No. 12 at 45–61.

On a motion to dismiss, the Court typically looks only to the allegations of the complaint. *Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 198 (7th Cir. 1985). However, under the incorporation by reference doctrine, the Court can consider the parties' exhibits if they are "(1) referenced in the plaintiff's complaint, (2) concededly authentic, and (3) central to the plaintiff's claim." *Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022). Additionally, "[t]he Court may of course judicially notice public records and government documents . . . ." *Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006); *cf.* Fed. R. Evid. 201(b)(2) (allowing courts to take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

In this case, the IDHR Charge is incorporated into Hines's Complaint by reference. On page three of Hines's Complaint, she references the Charge and the Charge number. Compl. 3. The Charge attached to Central Transport's motion is concededly authentic, as neither party argues that it is not legitimate. Though the Charge does not go directly to the facts underlying Hines's claim, in an analogous context, the Seventh Circuit held that EEOC charges are central to a plaintiff's complaint when the charge is referenced therein. *See Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) (holding that EEOC charges are incorporated into a plaintiff's pleadings when the charge is referenced in the complaint). The Court finds *Adams* persuasive and therefore will consider the IDHR Charge in resolving the motion to dismiss.

The Court will also take judicial notice of the IDHR Notice and Investigation Report. Both exhibits are official government documents created by the IDHR, and Central Transport does not dispute their accuracy.

The Court does not consider the remaining materials because they are neither incorporated by reference into Hines's Complaint nor subject to judicial notice.

**b. Timeliness**

The exhibits attached by the parties establish a clear timeline of the administrative procedure in this case. Hines first filed her Charge on February 8, 2023. Investigation Report 1. The Charge was perfected on October 3, 2024. *Id.* On September 3, 2025, the IDHR released an Investigation Report detailing its findings. *Id.* It issued notice to Hines informing her of the final decision on September 16, 2025. Notice of Substantial Evidence 1. Hines filed her lawsuit on December 15, 2025. Compl. 1.

The IHRA imposes several relevant deadlines. First, as effective at the time when Hines filed her Charge, she was required by statute to file a "charge" with the IDHR "[w]ithin 300 calendar days after the date that a civil rights violation allegedly ha[d] been committed." 2021 Ill. Legis. Serv. P.A. 102-558 (West) (current version at 775 ILCS 5/7A-102(A)(1)).[2] Second, "[w]hen a charge of a civil rights violation has been properly filed," the IDHR has 365 days to issue its report. *Id.* at (G)(1). Third, if the IDHR does not issue a report within 365 days, the complainant has 90 days to commence a civil action. *Id.* at (G)(2). Relatedly, if the report is filed and the Director of the IDHR makes a determination based on the report, the complainant has 90 days from receipt of notice of the decision to commence a civil suit. *Id.* at (D)(4).

[2] For ease of reference, in all subsequent references to the IHRA, the Court cites only to the relevant section of the Illinois Compiled Statutes (ILCS). All references are to the version of the IHRA in force from August 20, 2021, to December 31, 2023, found in 2021 Ill. Legis. Serv. P.A. 102-558 (West).

Compliance with these statutory deadlines is a condition precedent to suit under the IHRA. *See Weatherly v. Ill. Hum. Rts. Comm'n*, 788 N.E.2d 1175, 1178–79 (Ill. App. Ct. 2003) ("[C]ompliance with the statutory time limit is a condition precedent to the right to seek a remedy.").

Central Transport first contends that Hines did not comply with the requirement to file a charge within 300 days of the alleged violation because her Charge was not received by the IDHR until October 2024. *See generally* Mem. Supp. IDHR documentation shows that Hines's "charge" was filed on February 8, 2023, and perfected on October 3, 2024. Investigation Report 1. Even if the "charge" referenced in the IDHR's Investigation Report as filed on February 8, 2023 is, in fact, the CIS Hines attached to her briefing, *see* CIS, it qualifies as a "charge" within the meaning of the IHRA. *See Gonzalez v. Hum. Rts. Comm'n*, 534 N.E.2d 544, 548–49 (Ill. App. Ct. 1989) (holding that the subsequent filing of a charge with oath and affirmation "'relates back' to the initial filing" of an unperfected CIS form); *Ballard*, 173 F.4th at 949–50 (citing to *Gonzalez* for the proposition that, while the same is not true for purposes of the ADA, "under Illinois law, it appears that a CIS *does* qualify as a 'charge' that satisfies the [300-day filing] deadline for [IHRA] claims"). Hines was fired in February 2023. *See* Compl. ¶¶ 53–87 (alleging that her supervisor told her she was fired on February 5, 2023, but she continued communicating with agents of Central Transport until February 21). Accordingly, when Hines filed a "charge" on February 8, 2023, it was timely.

Central Transport next argues that, if her perfected Charge relates back to the initial date of filing, then the 365-day period for the IDHR to issue a report began on that date, too. *See* Reply 3–5. If so, then the IDHR only had until February 8, 2024, to issue a report, or June 7, 2024, at the latest (if considering an agreed 120-day extension to the IDHR's 365-day deadline).

*Id.* at 4. Thus, under the IHRA, Central Transport concludes, Hines only had until September 8, 2024—90 days after June 7, 2024—to commence a civil action. *Id.* She did not do so.

The question of when the IDHR's 365-day investigation period begins is an unresolved question of Illinois law. The only relevant authority identified by either party is *Styles v. Chicago Transit Authority*, No. 2023 L010976 (Ill. Cir. Ct. May 15, 2023), Reply Ex. 1, ECF No. 15 at 7–12, from the Circuit Court of Cook County. The *Styles* court, in similar circumstances, dismissed a plaintiff's complaint for failing to bring suit within 90 days after the IDHR failed to act for 365 days following the submission of a CIS. *See generally id.* The court reasoned that it "c[ould]not ignore the plain language of the IHRA which requires a plaintiff to file a civil action no later than 90 days after the IDHR failed to issue a report within 365 days of the initial charge filing date." *Id.* at 5. It therefore dismissed the case as "clear[ly]" untimely, holding that "[t]he fact that [the plaintiff] waited until the IDHR issued its report d[id] not toll the requirements under the IHRA." *Id.*

While federal courts sitting in diversity "cannot overturn established state precedent," *Sanchelima Int'l, Inc. v. Walker Stainless Equip. Co.*, 920 F.3d 1141, 1146 (7th Cir. 2019), the decision of a single state trial court is not binding on this Court, *see Roloff v. Sullivan*, 772 F. Supp. 1083, 1092 (N.D. Ind. 1991). Instead, to resolve a question of law that has not yet been decided by the Illinois Supreme Court, the proper question is "how the Supreme Court of Illinois would rule on it, using decisions of the state's intermediate appellate courts for guidance as necessary." *Straits Fin. LLC v. Ten Sleep Cattle Co.*, 900 F.3d 359, 369 (7th Cir. 2018) (quotation marks omitted).

Applying that rule of decision, the Court holds that the 365-day window for the IDHR to act does not begin until a charge is perfected. In interpreting statutes, the "primary objective" of

the Illinois Supreme Court is "to ascertain and give effect to the intent of the legislature, bearing in mind that the best evidence of such intent is the statutory language, given its plain and ordinary meaning." *People v. Eppinger*, 984 N.E.2d 475, 481 (Ill. 2013). In this case, the IHRA requires the IDHR to issue its report within 365 days "[w]hen a charge of a civil rights violation has been properly filed." 775 ILCS 5/7A-102(G)(1). It appears that, whatever Illinois courts have held with respect to relation back, a complainant's initial filing with the IDHR is not a charge. *See Ballard*, 173 F.4th at 950–51 (explaining that complainants only submit a CIS, not a charge, and that the "formal charge" is ultimately prepared by the IDHR). In that case, the statute would plainly refer to the date that the IDHR perfects a charge, not when the initial filing is made. However, the IDHR's own description of the process contradicts this conclusion since it also described Hines's initial filing as a "charge." *See* Investigation Report 1. In resolving this apparent ambiguity, the statute's use of the term "properly" is significant. As the Illinois Supreme Court has instructed, "statutes should be construed so that language is not rendered meaningless or superfluous." *People v. Singleton*, 469 N.E.2d 200, 203 (Ill. 1984). The language of section (G)(1)—"properly filed"—differs from the language of section (A)(1), under which an aggrieved party has 300 days to "file" (not "properly file") a charge. The difference in language suggests that filing a charge to satisfy the 300-day deadline is not identical to *properly* filing a charge and beginning the IDHR's 365-day investigation period. As such, the plain and ordinary meaning of the IHRA shows that the IDHR's 365-day deadline to issue a report runs from the date a charge is perfected.

This conclusion is bolstered by the Illinois Supreme Court's reminder that courts "are obliged to construe statutes . . . to avoid absurd or unjust consequences." *People v. Williams*, 518 N.E.2d 136, 138 (Ill. 1987). If the Court adopted the rule suggested by Central Transport, it

would bar a diligent plaintiff from receiving any remedy. Such an outcome would be inequitable, especially as the IHRA "is remedial in nature and is construed liberally to achieve its purpose." *M.U. by Kelly U. v. Team Ill. Hockey Club, Inc.*, 215 N.E.3d 286, 291 (Ill. App. Ct. 2022) (citing *Sangamon Cnty. Sheriff's Dep't v. Ill. Hum. Rts. Comm'n*, 908 N.E.2d 39, 47 (Ill. 2009)). Moreover, Central Transport's proposed rule would prevent the IDHR from considering charges it is designed to receive, since the IDHR's deadline to issue a report in this case—and likely in other, similar cases—would have run before the complainant's charge was ever perfected or the IDHR investigation began. Since the IHRA's administrative exhaustion requirement is designed to provide a pre-judicial administrative forum, such a result would be questionable, if not absurd.

Moreover, Central Transport's argument twists the Illinois Appellate Court's reasoning in articulating the rule that a perfected charge relates back to the initial filing of a CIS. In *Gonzalez*, the Illinois Appellate Court addressed whether the plaintiff timely filed a charge with the IDHR when he submitted a charge document within the statutory period but did not provide the accompanying oath or affirmation (a statutory requirement to file a charge) until after the deadline had passed. *Gonzalez*, 534 N.E.2d at 546. The court held that, in such circumstances, a plaintiff's filing of a charge under oath "'relates back' to the initial filing" and as such is "not in fact untimely." *Id.* at 549. The plaintiff had therefore satisfied all conditions precedent and his suit could proceed. *Id.* The court articulated the relation back doctrine because, *inter alia*, the IDHR followed its own procedure and there was no evidence that the plaintiff intended to abandon his claim. *Id.* at 548–49. It would therefore have been inequitable to bar his claim. *Id.* The same is true here: the IDHR followed its own procedure, and the record suggests that Hines diligently pursued her claim throughout the process. Central Transport asks the Court to use

*Gonzalez*—which favored leniency with respect to a plaintiff's filing deadline—to impose a rigid and harsh rule with respect to the IDHR's 365-day reporting deadline and a plaintiff's subsequent 90-day deadline to file suit. The Court declines to do so. Applying *Gonzalez* to bar Hines's suit and hold that the IDHR's investigation period began when she initially filed her Charge, not when it was perfected, would turn the court's reasoning on its head and pervert the court's intent of establishing a "liberal . . . policy" that is consistent with "equitable principles." *Id.*

In sum, the Court holds that the doctrine allowing a perfected charge to relate back to the date of its initial filing does not affect the beginning of the IDHR's 365-day deadline to submit a report. The 365-day deadline begins when a charge is perfected. The IDHR's 365-day window to act in this case, therefore, did not begin until Hines's Charge was perfected on October 3, 2024. The IDHR reached a decision and sent notice to Hines within the requisite period. Though the record does not establish when Hines received notice, since the IDHR issued its notice on September 16, 2025, Hines had at least until 90 days after that date—December 15, 2025—to file suit. As such, Hines's Complaint, filed on December 15, 2025, was timely.

**CONCLUSION**

Accordingly, Defendant Central Transport's motion to dismiss, ECF No. 7, is DENIED.

Entered this 21st day of September, 2026.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE